# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ALISSIA M.,

*Plaintiff,*

vs.                                                                  Case No. 19-2105-EFM

ANDREW SAUL,
Commissioner of Social Security,

*Defendant.*

## MEMORANDUM AND ORDER

Plaintiff brings this action seeking review of the final decision by Defendant, the Commissioner of Social Security ("Commissioner") denying her application for disability benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* Plaintiff alleges that the administrative law judge ("ALJ") erred in (1) finding that Plaintiff does not have an impairment or combination of impairments that meets the severity of one of the listed impairments; (2) assessing the medical opinion evidence and failing to order further testing; (3) formulating Plaintiff's residual functional capacity ("RFC"); and (4) failing to resolve an apparent conflict in vocational expert's testimony regarding the jobs Plaintiff could perform. Because the Court concludes that the ALJ did not resolve an apparent conflict between the general education development ("GED") reasoning level for the occupations stated by the vocational expert and Plaintiff's RFC, the Court reverses and remands the Commissioner's judgment.

# I.    Factual and Procedural Background

Plaintiff was born on March 7, 1971, and she is currently 49 years old.  Plaintiff completed the 11th grade and does not have either a high school diploma or G.E.D.  As discussed in more detail below, Plaintiff suffers from both mental and physical impairments.

Plaintiff filed for supplemental security income in May 2015.  After her claim was denied initially and on reconsideration, she requested a hearing.  In December 2017, an ALJ held an administrative hearing, during which Plaintiff was represented by counsel.  Plaintiff testified to multiple physical and mental limitations at the hearing, including severe neck pain, the inability to read and understand the newspaper, and the inability to comprehend information even when provided verbal or auditory instructions.

The ALJ issued his decision in January 2018.  In his decision, the ALJ identified several severe impairments, including degenerative disc disease of the cervical spine, a history of substance abuse, an adjustment disorder, generalized anxiety disorder, schizoaffective disorder, major depressive disorder, and personality disorder.  The ALJ found that none of these impairments met or equaled a listed impairment.  The ALJ assessed Plaintiff's RFC as:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) in that she can lift and carry 20 pounds occasionally and 10 pounds frequently.  She can stand or walk a total of 6 hours in an 8-hour workday and sit up to 6 hours in an 8-hour workday.  She can understand, remember, and carry out simple instructions and perform routine, repetitive tasks.  She should not provide services to the public and have only occasional interpersonal contact with other workers.

The ALJ next determined that Plaintiff had no past relevant work.  He then considered Plaintiff's age, education, work experience and found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.  In making this determination, the ALJ relied on testimony from the vocational expert who testified that a person with Plaintiff's

RFC, age, education, and work experience could perform the requirements of a collator operator, small parts assembler, and inserting machine operator. The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security act, since the date her application was filed.

Given the unfavorable result, Plaintiff requested review of the ALJ's decision by the Appeals Council. The Appeals Council denied her request, and Plaintiff timely filed her Complaint appealing that decision in this Court. Because Plaintiff has exhausted her administrative remedies, this Court has jurisdiction to review the decision.

## II.    Legal Standard

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."[1] An individual will be determined to be under a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[2]

Pursuant to the Act, the Social Security Administration has established a five-step sequential process for evaluating whether an individual is disabled.[3] The steps must be followed

---

[1] 42 U.S.C. §§ 423(d)(1)(A), 416(i)(1)(a).

[2] *Id*. § 423(d)(2)(A).

[3] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. §§ 404.1520(a), 416.920(a).

in order.  If it is determined at any step of the evaluation process that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[4]

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability, (2) whether the claimant has a severe, or combination of severe, impairments, and (3) whether the severity of those impairments meets or equals a designated list of impairments.[5]  If the impairment does not meet or equal one of these designated impairments, the Commissioner must then determine the claimant's RFC, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments."[6]

Upon assessing the claimant's RFC, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform his past relevant work or whether he can generally perform other work that exists in the national economy, respectively.[7]  The claimant bears the burden in steps one through four to prove a disability that prevents performance of his past relevant work.[8]  The burden then shifts to the Commissioner at step five to show that, despite the claimant's alleged impairments, the claimant could perform other work in the national economy.[9]

---

[4] *Barkley v. Astrue*, 2010 WL 3001753, at *2 (D. Kan. 2010).

[5] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

[6] *Barkley*, 2010 WL 3001753, at *2 (citing 20 C.F.R. § 416.920(e)); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

[7] *Barkley*, 2010 WL 3001753, at *2 (citing *Williams*, 844 F.2d at 751).

[8] *Lax*, 489 F.3d at 1084.

[9] *Id.*

## III.    Analysis

Plaintiff challenges the ALJ's findings at steps three, four, and five.  First, Plaintiff contends that the ALJ erred in finding that her impairments did not meet or equal a listing in in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Second, Plaintiff contends that the ALJ erred in weighing the medical opinion evidence and not ordering an additional consultative exam.  Third, Plaintiff contends that the ALJ erred in assessing her RFC.  And fourth, Plaintiff contends that the ALJ erred in failing to resolve an apparent conflict in the vocational expert's testimony between the GED reasoning level for the occupations Plaintiff could perform and Plaintiff's RFC.

The Court's review is guided by the Act.  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."[10]  The Court must therefore determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.[11]  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[12]  The threshold for evidentiary sufficiency is not high, but it is "more than a mere scintilla."[13]

---

[10] 42 U.S.C. § 405(g).

[11] *Lax*, 489 F.3d at 1084 (citation omitted); *accord, White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001).

[12] *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[13] *Id.*

**A.      Plaintiff's impairments did not meet a listing at step three.**

Plaintiff argues that the ALJ erred in finding that her impairments did not meet or medically equal any of the listings, namely those for disorders of the spine (Listing 1.04) or certain mental health disorders (Listings 12.03, 12.04, 12.06, and 12.08).

The Commissioner has provided a "Listing of Impairments" that describes certain impairments he considers disabling.[14]  If a claimant's condition "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled."[15]  The claimant, however, bears the burden of demonstrating, through medical evidence, that her impairments meet the specified criteria in a particular listing.[16]  If an impairment only meets some, but not all, of the listing criteria, it does not qualify.[17]

"The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard.  The listings define impairments that would prevent an adult, regardless of h[er] age, education, or work experience from performing *any* gainful activity, not just 'substantial gainful activity.' "[18]  The listings "streamline the decision process by identifying those claimants whose medical impairments are so severe that it is likely

---

[14] 20 C.F.R. § 416.925(a); *see also* 20 C.F.R., Pt. 404, Subpt. P, App. 1 (Listing of Impairments).

[15] *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

[16] *Riddle v. Halter*, 2001 WL 282344, at *1 (10th Cir. 2001) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).

[17] *Zebley*, 493 U.S. at 530.

[18] *Id*. at 532-33 (citing 20 C.F.R. § 416.925(a) (1989)).

they would be found disabled regardless of their vocational background."[19]  The listings should

not be read expansively.[20]

Here, the ALJ concluded that Plaintiff's disorder of the cervical spine does not meet the

requirements of Listing 1.04 because she does not have evidence of nerve root compression or

spinal arachnoiditis.  Listing 1.04 provides:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.[21]

The ALJ found that Plaintiff suffers from degenerative disc disease of the cervical spine.

Plaintiff therefore meets the first criteria set forth in Listing 1.04 (a disorder of the spine).

[19] *Yucker*, 482 U.S. at 153.

[20] *Bricker v. Berryhill*, 2018 WL 4851472, at *4 (D. Kan. 2018) (citing *Caviness v. Apfel*, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998)).

[21] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

Plaintiff's argument fails, however, because she has not identified any evidence in the record that would satisfy the remaining elements of Listing 1.04, *i.e.*, nerve root compression (1.04A), spinal arachnoiditis (1.04B), or lumbar spinal stenosis (1.04C). To the contrary, medical imaging in the record showed only some "mild" degenerative changes in Plaintiff's neck, with "well-maintained" disc space heights and unremarkable prevertebral soft tissues and postural elements.

Plaintiff takes issue with the ALJ's finding that there was no nerve root impingement, arguing that "the lack of this single physical symptom does not bar the ALJ's duty to view the record as a whole." But she has not identified a single medical finding of equal severity. Instead, she points to her history of back and neck pain and her testimony regarding how her back and neck pain limit her mobility. These are symptoms, which cannot be substituted for the requisite objective criteria.[22]

Plaintiff also claims that the ALJ failed to take into consideration her history of bladder problems and urinary tract infections, which contribute to her back pain. Again, however, neither of these physical impairments is equivalent to a finding of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis. Accordingly, the ALJ did not err in concluding that Plaintiff's degenerative disc disease of the spine did not meet Listing 1.04.

---

[22] *See* Program Operations Manual System (POMS) DI24508.010, (http://secure.ssa.gov/poms.nsf/lnx/0424508010, March 28, 2020) ("When substituting a finding or symptom from a listing [when assessing medical equivalence], you may substitute symptoms for other symptoms and findings for other finding only. Never substitute a symptom for a finding.") "POMS is a policy and procedural manual that employees of the Social Security Administration use in evaluating social security claims. Although the POMS does not have the force and effect of law, it is nevertheless a persuasive interpretation by the Commissioner of binding statutory and regulatory law." *Lowe v. Colvin*, 2016 WL 4943971, at *3 (D. Kan. 2016) (citations omitted).

As to the mental health listings, the ALJ found that the severity of Plaintiff's mental impairments does not meet or medically equal the criteria of listings in 12.03, 12.04, 12.06, and 12.08. Specifically, the ALJ stated that Plaintiff did not satisfy either the B-criteria or C-criteria as to these listings. The Court will address the ALJ's findings as to each of these criteria below.

### 1.    B-Criteria

Under the B-criteria, Plaintiff must show an "extreme" limitation in one, or "marked" limitation in two, of the following functional areas: understand, remember, and apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself.[23]  The ALJ explained the "extreme" and "marked" limitations in his decision as follows:

> To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning.  An extreme limitation is the inability to function independently, appropriately, or effectively on a sustained basis.  A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.[24]

The ALJ generally found that Plaintiff did not satisfy the B-criteria because she has at most moderate limitations in the identified areas of functioning.  Plaintiff argues that the ALJ erred by not sufficiently articulating his findings.  The Court acknowledges that the ALJ's analysis in step three primarily consisted of a single sentence as to each area of functioning that was uncorroborated by citation to specific medical records.[25]  This error, however, does not require remand.  The Tenth Circuit has held that "an ALJ's findings at other steps of the sequential process

---

[23] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.03B, 12.04B, 12.06B, 12.08B.

[24] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C.  Plaintiff does not argue that the ALJ applied the incorrect standard as to the B- or C-criteria.

[25] For example, the ALJ stated, "[T]he claimant's mental impairments resulted in moderate limitation in understanding, remembering or applying information.  The evidence of record, including the testimony of the claimant, shows that mentally, she is generally able to learn, recall, or use information on an independent and sustained basis."

may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment."[26]  Indeed, the ALJ stated in his decision that his step four analysis would provide a more detailed assessment of Plaintiff's mental functioning.  And, as discussed below, it did.

At step four of the analysis, the ALJ specifically noted that the clinical signs and findings were consistent with more than a mild limitation in Plaintiff's ability to adapt and manage herself and moderate limitations in her ability to understand, remember, or apply information, interact with others, and concentrate, persist, and maintain pace.  The ALJ noted that Plaintiff was sporadically compliant with her medication and occasionally presented to medication management with some oddity of thought and somewhat erratic behavior.  But, the record also showed that she was generally able to maintain a calm and cooperative demeanor with good eye contact, normal psychomotor activity, grossly intact memory functioning, adequate attention and concentration, and linear, logical, and goal-directed thoughts.  The ALJ found that Plaintiff's auditory hallucinations were relieved with medication and she was able to carry on conversations without showing signs of symptoms.  He further found that updated mental health records revealed she exhibited good touch with reality and was able to focus and complete paperwork with support. Accordingly, the Court finds that the ALJ has not erred by failing to articulate his findings as to the B-criteria at step three of the analysis.

Plaintiff argues that the ALJ erred in failing to find marked limitations as to the B-criteria because the record shows that she experienced long periods of homelessness.  Plaintiff, however, does not explain how her homelessness compels such a finding.  The ALJ considered all the record

---

[26] *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005).

evidence, which included records indicating that when Plaintiff was homeless, she socialized at the Frank Williams Center and ate meals at the food kitchen. Thus, substantial evidence supports the ALJ's analysis as to the B-criteria.

### 2.     *C-Criteria*

The ALJ also considered whether the C-criteria are satisfied, setting forth his analysis and findings as follows:

> The "paragraph C" criteria for Listings 12.03, 12.04, and 12.06 represent instances where the claimant's impairments would have imposed such significant limitations that the claimant would have only a marginal ability to adapt to work. In this case, the claimant has failed to show that medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing that diminishes the signs and symptoms of the mental disorder and that the mental disorder results in a minimal capacity to adapt to changes in the environment or to demands that are not already part of the claimant's daily life.

Again, Plaintiff argues that this analysis is incomplete and that the ALJ did not support his decision with substantial evidence in the record. The Court disagrees.

The ALJ's analysis in step four shows that Plaintiff cannot show a minimal capacity to adapt to changes in her environment. The ALJ noted that Plaintiff has not required inpatient psychological treatment in more than ten years and that she did not seek mental health treatment as an adult until 2013. He also noted that her auditory hallucinations were relieved with medication management and her case managers observed that she was friendly with others and able to focus and carry on a conversation. Accordingly, the Court concludes that the ALJ adequately supported his findings as to Plaintiff's inability to meet the C-criteria. Plaintiff has not shown that the criteria in Listings 12.03, 12.04, 12.06, and 12.08 were met.

**B.     Medical Opinion Evidence and Duty to Develop the Record**

Plaintiff argues that the ALJ erred in giving "great weight" to the most recent consultative exam by Dr. Forbes because it was based on a one-time examination and was inconsistent within itself.  Plaintiff claims that when Dr. Forbes examined her in February 2016, Dr. Forbes reported that she was "alert and oriented" and "does not appear depressed or anxious" but also indicated that psychiatric symptoms were present, including nervousness, anxiety, and difficulty.  Plaintiff's argument is not persuasive.  The ALJ did not give Dr. Forbes opinion great weight when assessing Plaintiff's non-exertional limitations.  Instead, the ALJ gave the opinion "limited weight" reasoning that Plaintiff's mental functional capacity is outside of Dr. Forbes' expertise and that an updated treatment record suggests that Plaintiff would have at least some limitations in her ability to perform basic work activities.  The ALJ only gave Dr. Forbes' opinion great weight when assessing Plaintiff's physical limitations, and Plaintiff has not identified any inconsistencies within Dr. Forbes' opinion as to those limitations.

Plaintiff also argues that the ALJ erred in failing to develop the record when assessing her RFC.  Plaintiff argues the ALJ improperly speculates that her sporadic treatment history is purposeful.  She also argues that the ALJ should have requested an examination of her basic skills such as reading and writing.

The ALJ has a duty to develop the record:

> The ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised. This is true despite the presence of counsel, although the duty is heightened when the claimant is unrepresented. The duty is one of inquiry, ensuring that the

ALJ is informed about facts relevant to his decision and learns the claimant's own version of those facts.[27]

Although Plaintiff complains that there is limited evidence for the ALJ to assess her mental limitations, the record suggests otherwise. As discussed below, the ALJ discussed Plaintiff's treatment records from 2014 to 2017 as to her mental deficits. He was able to determine that she suffered from the severe impairments of an adjustment disorder, generalized anxiety disorder, schizoaffective disorder, major depressive disorder, and personality disorder. He found that these mental impairments limited her to work with only simple instructions and routine, repetitive tasks and no public interaction and limited interpersonal interaction.

Plaintiff argues that the ALJ should have ordered a consultative examination and sought a current opinion regarding her ability to read and write. The regulations effective when this case was decided require "a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision."[28] In this regard, Plaintiff argues that the ALJ made inappropriate medical decisions when formulating her RFC. But there is no evidence in the record that the ALJ made such inappropriate decisions in this case. "[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."[29] "And the ALJ's RFC assessment is an administrative, rather than a

---

[27] *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993) (citations, quotations, and brackets omitted).

[28] 20 C.F.R. § 404.1519a(b) (2017) (effective March 26, 2012).

[29] *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

medical determination."[30]  Here, the ALJ considered the evidence, medical and nonmedical, and assessed an RFC based on that evidence.

Plaintiff's argument further fails because she was represented by counsel during the hearing, and he did not state that a consultative exam might be necessary.

> [I]n cases such as this one where the claimant was represented by counsel, " 'the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present [the] claimant's case in a way that the claimant's claims are adequately explored,' and the ALJ 'may ordinarily require counsel to identify the issue or issues requiring further development.' "[31]

Accordingly, the Court concludes the ALJ did not err in his treatment of Dr. Forbes' opinion or in failing to order a consultative examination.

## C.    RFC Assessment

The ALJ included significant physical and mental limitations in Plaintiff's RFC, which Plaintiff contends are not supported by substantial evidence.  As to Plaintiff's physical limitations, the ALJ limited Plaintiff to a reduced range of simple, light work.  He concluded that she can lift 20 pounds occasionally and 10 pounds frequently.  He also concluded that she can sit, stand, or walk for six hours in an eight-hour workday.

Plaintiff argues that the ALJ relies on stale, liberally-used evidence from the record in support of this determination.  Specifically, Plaintiff takes issue with the ALJ's reference to a record that states Plaintiff swims and walks the mall for exercise.  Plaintiff argues that this same record shows that she was homeless the preceding month.  But Plaintiff does not explain, and the

---

[30] *McDonald v. Astrue*, 492 F. App'x 875, 885 (10th Cir. 2012) (citing SSR 96-05p, 1996 WL 374183, at *5 (July 1996)).

[31] *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997))).

Court cannot determine, how her homelessness discredits her ability to swim and walk. Furthermore, the Court disagrees with Plaintiff that the ALJ's exertional limitations are not supported by substantial evidence in the record. Although Plaintiff complained of pain in her joints and spine, imaging of these areas was unremarkable. In September 2016, she reported pain in her left side after she fell. An x-ray from that time showed mild right neuroforaminal narrowing at two vertebrae, but it also showed well-spaced disc heights and no signs of canal narrowing or root impingement. Additionally, during that same period, Plaintiff also wore a neck brace in bed and around her house, and the examiner observed decreased range of motion in her cervical spine and upper extremities. After she stopped wearing the neck brace, however, Plaintiff did not have increased pain. Plaintiff denied having difficulty walking in 2016, and she reportedly used a cane only at home.

The ALJ also appropriately found that Plaintiff's activities of daily living support his exertional limitations. Plaintiff testified that she babysits, could independently perform personal care, and that she washes her hands and dishes multiple times a day.

As to opinion evidence, the most recent consultative examiner opined that Plaintiff could sit, walk, and stand for a full work day but she could not lift over 20 pounds. The state agency consultant opined that Plaintiff could perform less than a full range of medium work with frequent climbing of ramps and stairs, occasional climbing of ladders, ropes, and scaffolds, and frequent balancing stooping, kneeling, crouching, and crawling. By concluding that Plaintiff could only perform a range of light work and was limited to sitting, standing, or walking to six hours per day, the ALJ's exertional limitation is actually *more* conservative than what these medical sources opined.

Additionally, Plaintiff's caseworker opined that Plaintiff could not work because of her physical limitations. The ALJ properly discredited this opinion as being outside the caseworker's area of expertise. A nurse also told Plaintiff to temporarily avoid heavy lifting and strenuous work activity due to a urinary tract infection. The ALJ found this to be temporary restriction. He also properly concluded that this opinion was issued by a licensed nurse, who is not an acceptable medical source to issue a medical opinion. Taking all of this evidence into consideration, the Court concludes that the exertional limitations in Plaintiff's RFC are supported by substantial evidence.

After assessing Plaintiff's mental impairments, the ALJ limited her RFC to routine, repetitive tasks with simple instructions. Additionally, the ALJ limited Plaintiff to services with no public interaction and only occasional interpersonal contact with others. Plaintiff makes multiple arguments as to why these limitations are not supported by substantial evidence. But these arguments are not persuasive because they ask the Court to reweigh the evidence and substitute its decision for that of the ALJ. This the Court cannot do. The ALJ is entitled to resolve the evidentiary conflicts in the record.[32]

Plaintiff first argues that the ALJ erred in discounting her reported non-exertional limitations. She argues that her testimony and the medical record contradicts the ALJ's findings that she has only moderate difficulties understanding and applying information. The Court, however, disagrees. As noted by the ALJ, the record shows that Plaintiff generally was able to

---

[32] *See Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016) ("In short, the record contains support for both the notion that Mr. Allman has extreme deficiencies in concentration, persistence, and pace, and the notion that his mental limitations are not that severe. The ALJ was entitled to resolve such evidentiary conflicts and did so.") (citation omitted); *see also Lax*, 489 F.3d at 1084 ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.").

learn, recall, and use information on an independent and sustained basis: in 2014 Plaintiff had a normal mental examination other than presenting with only mild emotional expression; in 2015 and 2016, despite sporadic medication compliance, Plaintiff had grossly intact memory functioning, adequate attention and concentration, and linear, logical, and goal-directed thoughts; and updated treatment notes from her most recent caseworker revealed that Plaintiff was focused and able to complete paperwork despite a short attention span and agitation. Thus, even though Plaintiff points to conflicting testimony, there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff is moderately limited in understanding, remembering, and applying information.

Plaintiff next argues that the ALJ overstates Plaintiff's capacity to conduct independent activities of daily living. Plaintiff claims the ALJ inappropriately discounted her inability to drive, complete household chores, and her obsessive hand-washing. However, the record shows that despite Plaintiff's ongoing symptoms she could independently handle her activities of daily living. She could swim, walk at the mall, babysit, socialize, read, draw, perform light household chores, and care for her personal needs. Thus, the ALJ reasonably found that Plaintiff's daily activities did not indicate the limitations to the degree Plaintiff has alleged.[33]

Next, Plaintiff argues that the ALJ inappropriately discounted Plaintiff's sleep disorders and photosensitivity. Plaintiff reports that the ALJ failed to consider how these reported symptoms would affect her ability to maintain substantial gainful activity. The ALJ, however, specifically addressed these symptoms in his RFC analysis, noting that Plaintiff reported difficulty falling and

---

[33] *See Wilson*, 602 F.3d at 1146 (finding that the claimant's daily activities did not indicate limitations of the degree alleged).

staying asleep after her medication for her hallucinations wears off, and that her hallucinations are aggravated by sunlight and bright light. The ALJ found, however, that Plaintiff's reported symptoms were not of such a consistent and continuous nature that they would preclude all work activity.[34] Moreover, the ALJ, noted in his decision that he considered "the limitations and restrictions imposed by the combined effects of all the claimant's medically determinable impairments" in assessing her RFC. The Tenth Circuit has stated that it will take the ALJ at his word when the entirety of the ALJ's discussion of the evidence and the reasons for his conclusions demonstrate that he adequately considered the claimant's impairments.[35] Accordingly, the Court finds no error in the ALJ's treatment of Plaintiff's alleged sleep disorders and photosensitivity.

Finally, Plaintiff takes issue with the fact that the ALJ discounted the opinions of her probation officer and SOAR caseworker. The probation officer said that she was easily distracted and frustrated, responded to internal stimuli, and had occasional panic attacks, while her SOAR caseworker said that she was only able to work a few hours a day. The ALJ considered these opinions but ultimately gave them "limited" weight. He found them cumulative to Plaintiff's own allegations and inconsistent with Plaintiff's positive response to medication management. The ALJ gave more weight to Plaintiff's current case manager who testified that she previously met Plaintiff once a quarter until recently when it was more frequent so she could help Plaintiff enroll

---

[34] It's not clear from Plaintiff's argument whether Plaintiff asserts error as to the ALJ's credibility analysis. Neither party has addressed the issue. To the extent Plaintiff makes such argument, the Court does not find error. The standard for judicial review of Social Security decisions is deferential and an ALJ's credibility determinations are generally treated as binding on review. *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990); *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010). Here, the ALJ's analysis of Plaintiff's symptoms meets the standard set forth by the Tenth Circuit. *See id.* at 1144-45 (citations omitted).

[35] *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009).

in Medicaid.  The ALJ relied on this testimony as evidence that she was not dependent on a caseworker for day-to-day living.

The Court does not fault the ALJ's treatment of these opinions.  These individuals are not treating physicians and the ALJ is not required to analyze these opinions pursuant to certain regulatory factors.[36]  The ALJ adequately explained why he gave each opinion limited or more weight.

Overall, the ALJ's RFC assessment is supported by substantial evidence in the record.

**D.      The Vocational Expert's Testimony**

After finding that Plaintiff did not have any past relevant work, he proceeded to determine if there was other work existing in significant numbers in the national economy she could perform given her age, education, work experience, and RFC.  A vocational expert testified that such a person could perform the unskilled, light occupations of collator, small parts assembler, and inserting machine operator.  The ALJ determined that these occupations comprised a significant number of jobs in the national economy and, accordingly, that Plaintiff was not disabled under the Act.

Plaintiff argues that the ALJ erred by failing to comply with Social Security Regulation ("SSR") 00-4p[37] by failing to inquire and resolve an apparent conflict between the Dictionary of Occupation Titles' ("DOT") GED reasoning level for the occupations stated by the vocational expert and Plaintiff's RFC limiting her to simple work.  According to Plaintiff, all of the

---

[36] *See Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (stating that when an ALJ fails to assign particular weight to a treating physician's opinion, remand is required).

[37] Social Security Ruling 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).

occupations listed by the vocational expert require a GED reasoning level of two or three, which is inconsistent with an individual in her position and with her limitations.

SSR 00-4p provides that before an ALJ relies on a vocational expert's testimony to support a disability determination, the ALJ must identify and obtain a reasonable explanation for any conflicts with the vocational expert's testimony and the DOT.[38] The ALJ must resolve the conflict by determining if the explanation given by the vocational expert is reasonable and provides a basis for relying on the vocational expert's testimony rather than on DOT information.[39] The ALJ must also explain in his decision how such conflicts were resolved.[40]

The Tenth Circuit has found a conflict between a GED reasoning level of three and an RFC limiting the claimant to simple and routine work. In *Hackett v. Barnhart*,[41] the ALJ found that the claimant retained the attention, concentration, persistence, and pace levels required for simple and routine work tasks.[42] The ALJ and the vocational expert then identified jobs that plaintiff could perform, all of which required a GED reasoning level of three.[43] The court, citing the Eighth Circuit opinion *Lucy v. Chater*,[44] held that the RFC limitation was inconsistent with the demands of level three reasoning.[45] The court therefore reversed this portion of the ALJ's decision and

---

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] 395 F.3d 1168 (10th Cir. 2005).

[42] *Id.* at 1176.

[43] *Id.*

[44] 113 F.3d 905 (8th Cir. 1997).

[45] *Hackett*, 395 F.3d at 1176.

remanded to address the apparent conflict between the plaintiff's inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified by the vocational expert.[46]

Here, contrary to Plaintiff's assertion, all of the jobs identified by the vocational expert have a GED reasoning level of two.[47]  In dicta, the *Hackett* court stated that level-two reasoning appears more consistent with the claimant's RFC of simple, routine work.[48]  Relying on this statement, the Commissioner argues that there was no conflict here for the ALJ to resolve.  But the Commissioner's reliance on *Hackett* is misplaced.  The issue of whether a GED reasoning level of two conflicts with simple work was not before the Court in *Hackett*.  The Tenth Circuit has affirmed this in the more recent case of *Paulek v. Colvin*:[49]

> As Mr. Paulek notes, we have previously held that a limitation to "simple and routine work tasks . . . seems inconsistent with the demands of level-three reasoning."[50] While we have not spoken to whether a limitation to simple and routine work tasks is analogous to a limitation to carrying out simple instructions, the Eighth Circuit has held that a limitation to simple instructions is inconsistent with both level-two and level-three reasoning.[51]

A GED reasoning level of two requires the ability to carry out detailed but uninvolved written or oral instructions.[52]  Here, the ALJ stated that Plaintiff can understand, remember, and

---

[46] *Id.*

[47] *See* DOT Nos. 208.685-010 (collator), 706.684-022 (small parts assembler), 208.685-018 (inserting machine operator).

[48] *Hackett*, 395 F.3d at 1176.

[49] 662 F. App'x 588 (10th Cir. 2016).

[50] *Id.* at 594 (citing *Hackett*, 395 F.3d at 1176).

[51] *Id.* (citing *Lucy*, 113 F.3d at 909).

[52] *Id.* (citing DOT Vol. 2 at 1011).

carry out simple work instructions—the same limitation given in *Hackett* and *Paulek*. In *Lucy*, a case which is cited with approval by Tenth Circuit in *Hackett* and *Paulek*, the Eighth Circuit held that a limitation to simple instructions is inconsistent with both level-two and level-three reasoning.[53] This Court agrees that, on their face, the requirements for level-two reasoning conflict with an RFC for carrying out simple work instructions.[54] Therefore, this case should be remanded for the ALJ to inquire about and resolve the conflict between the vocational expert's testimony and the description of the jobs in the DOT.

**IT IS THEREFORE ORDERED** that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

**IT IS SO ORDERED**.

Dated this 13th day of April, 2020.

This case is closed.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[53] *Lucy*, 113 F.3d at 909.

[54] *See MacDonald v. Berryhill*, 2018 WL 806221, at * 4 (D. Kan. 2018) (finding a conflict between a GED reasoning level of two and an RFC limiting the claimant to simple work instructions).